IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TARRENCE DRAMON TOLBERT,       *
# 19991-509,                   *
                               *
     Petitioner,               *
                               *  CRIMINAL NO. 20-00154-WS-B
vs.                            *  CIVIL ACTION NO. 22-00269-WS-B
                               *
UNITED STATES OF AMERICA,      *
                               *
     Respondent.               *

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Tarrence Dramon Tolbert's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 48). This matter was referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration, the undersigned hereby recommends

---

[1] United States District Judge William H. Steele presided over the proceedings in this action. The undersigned has reviewed Petitioner Tolbert's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Steele.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. Holmes v. United States, 876 F.2d

that Petitioner Tolbert's § 2255 motion be **DENIED,** that this action be **DISMISSED with prejudice,** and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Tolbert.  The undersigned further recommends that in the event Petitioner Tolbert requests a certificate of appealability and seeks to appeal *in forma pauperis,* said requests be **DENIED.**

    I.   <u>**BACKGROUND**</u>

On the night of February 24, 2020, a correctional sergeant employed at Fountain Correctional Facility observed Petitioner Tarrence Dramon Tolbert ("Tolbert"), a basic correctional officer trainee, standing outside his vehicle on the side of the road in Escambia County, Alabama.  (Doc. 19 at 1-2).  Tolbert told the sergeant there was no problem, and that he was waiting for a relative.  (<u>Id.</u> at 2).  The sergeant reported this event to a superior officer at Fountain, who ordered that Tolbert be searched when he arrived for work.  (<u>Id.</u>).  Tolbert arrived at Fountain approximately twenty minutes after the sergeant saw him by the roadside.  (<u>Id.</u>).  A search of Tolbert's lunch bag revealed a number of items of prison contraband, including two packages containing what appeared to be marijuana and a package containing more than fifty grams of methamphetamine.  (<u>Id.</u> at 2, 4).  Tolbert admitted that an inmate had instructed him to meet a woman on the

_____

1545, 1553 (11th Cir. 1989).

road to pick up the package, and that the woman had given him the package and instructed him to give it to another inmate. (Id. at 2). Tolbert claimed he did not know the exact contents of the package, "but he knew it would be illegal, such as drugs." (Id. at 3). A search of Tolbert's truck in the prison's employee parking area found a rifle and a shotgun inside the vehicle. (Id.).

Tolbert was indicted in November 2020 and charged with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (count one), and possession with intent to distribute approximately 53.52 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (count two). (Doc. 1). In January 2021, Tolbert's retained counsel informed the Court that Tolbert intended to plead guilty to count two of the indictment pursuant to a written plea agreement. (Docs. 17, 18). As part of the plea agreement, Tolbert waived the right to challenge his guilty plea, conviction, or sentence in a direct appeal or collateral attack, except that Tolbert reserved the right to timely file a direct appeal challenging any sentence imposed in excess of the statutory maximum or constituting an upward departure or variance from the advisory guideline range, and to claim ineffective assistance of counsel in either a direct appeal or § 2255 motion. (Doc. 20 at 11). In return, the Government agreed that it would not bring any additional charges related to the facts

underlying the indictment, move to dismiss the remaining count after sentencing, and recommend that Tolbert be sentenced at the low end of the advisory guideline range as determined by the Court. (Id. at 5-6).

At his change-of-plea hearing on January 28, 2021, Tolbert was placed under oath and questioned by the Court as to the knowing and voluntary nature of his plea. (See Doc. 46). Tolbert acknowledged that he had received a copy of the indictment, had a full opportunity to read and review it with his attorney, had fully discussed with his attorney all of the facts surrounding the charge against him, and fully understood the charge. (Id. at 3-4). Tolbert also confirmed that he had received a copy of the plea agreement, had been afforded an opportunity to read and review it with his attorney, fully understood and agreed with the terms and conditions of the plea agreement and factual resume, and had in fact signed both documents. (Id. at 4). Tolbert stated that he was fully satisfied with the representation he had received from his attorney in the case. (Id. at 3-4). He confirmed that no one had made any promises to him or attempted to force, pressure, or threaten him to plead guilty. (Id. at 4). The Court informed Tolbert of the potential penalties for the offense, and Tolbert confirmed that he understood those penalties. (Id. at 4-5). Tolbert acknowledged that he had discussed with his attorney how the sentencing guidelines might affect his case, he understood

4

that the Court had the authority to impose a sentence more or less
severe than that called for in the guidelines, and he understood
that the sentence imposed might be different from any estimate his
attorney or anyone else might have given him.  (Id. at 5-6).
Tolbert also confirmed that he understood the appeal and collateral
attack waiver in his plea agreement and the limited exceptions to
that waiver.  (Id. at 6-7).  The Court stated the elements of the
offense, and Tolbert confirmed that he understood those were the
elements to which he was pleading guilty and acknowledged that he
had in fact committed the acts and done the things he had admitted
to doing in the factual resume.  (Id. at 8).  Tolbert entered a
plea of guilty to the charge contained in count two of the
indictment, and the Court accepted Tolbert's plea and adjudicated
him guilty of that offense.  (Id. at 9).

Before Tolbert's sentencing, a probation officer prepared a
presentence investigation report ("PSR").  (Doc. 30).  The PSR
found that Tolbert's base offense level was 30.  (Id. at 6).
Tolbert received a two-level increase under U.S.S.G. § 2D1.1(b)(1)
because a dangerous weapon was possessed; a two-level increase
under § 2D1.1(b)(4) because the object of the offense was the
distribution of a controlled substance in a prison; a two-level
increase under § 3B1.3 for abuse of a position of public trust;
and a three-level reduction under § 3E1.1(a)-(b) for acceptance of
responsibility, making his total offense level 33.  (Id.).  Based

on a total offense level of 33 and a criminal history category of I, the PSR reported that Tolbert's guideline imprisonment range was 135 to 168 months.  (Id. at 11).

Tolbert's counsel filed written objections to the PSR, in which he "dispute[d] the addition of two levels for the possession of a dangerous weapon and thus, the exclusion of or omission of/apparent disqualifying the defendant of eligibility for Safety Valve."  (Doc. 33 at 1).  Counsel asserted that Tolbert possessed the rifle and shotgun found in his vehicle "not for the commission of the offense" but "merely for recreational hunting, lawful by State and Federal law."  (Id. at 1-2).  Counsel also noted that the firearms "were not the subject of a 924(c) Count in the Indictment."  (Id. at 2).  Thus, Tolbert's counsel "object[ed] to the 2 points: 'if a dangerous weapon was possessed' and . . . argue[d] for his being afforded Safety Valve."  (Id.).

In an addendum to the PSR, the probation officer responded to the objection, as follows:

> In the final paragraph of the defendant's signed Factual Resume it states, "The defendant admits that the firearms identified in the indictment had the potential to facilitate the commission of the offense and are subject to forfeiture in accordance with the forfeiture notice in the indictment."  For this reason, the report remains unchanged.

(Doc. 34 at 1; see also Doc. 36).

At Tolbert's sentencing hearing on June 29, 2021, his counsel reiterated the objection to the two-level enhancement for

possession of a dangerous weapon in connection with a drug offense and argued in favor of safety valve relief. (Doc. 47 at 3-6). Defense counsel contended that Tolbert possessed the firearms for hunting and was not using them in furtherance of illicit drug activity. (Id. at 3-4). Counsel argued that given the circumstances of Tolbert's crime, there was no evidence that the guns were used in connection with the offense. (Id. at 4-6). In response, the Government's counsel pointed to Tolbert's admissions in the factual resume that the firearms had the potential to facilitate the commission of the offense and were subject to forfeiture in accordance with the forfeiture notice. (Id. at 7). The Government's counsel argued that had Tolbert been confronted by a threat at the time he took possession of the contraband, the firearms had the potential to protect him and the contraband in that situation. (Id.). The Government's counsel also noted that the drugs and other contraband were transported in the same vehicle with the firearms, and that Tolbert was aware that the weapons were in the vehicle. (Id.). Thus, the Government's counsel asserted that Tolbert had not met his burden to show that a connection between the weapons and the offense was "clearly improbable." (Id.).

The Court overruled Tolbert's objection to the firearm enhancement. (Id. at 9). In doing so, the Court specifically noted that the firearms were in same vehicle used to transport the

illegal contraband to the prison and were not stored in a "gun
rack" or "in a case or something which a lot of people use if they
were going hunting," and that Tolbert had admitted in the factual
resume that the firearms had the potential to facilitate the
commission of the offense. (Id. at 8-9). The Court told Tolbert
that "the clearly and probable test doesn't weigh in your favor"
and stated: "[I]n fact, I don't even see this as a close case given
the standard as it's been defined by the Eleventh Circuit." (Id.
at 9). Tolbert then personally addressed the Court regarding the
firearms, as follows:

> The firearms we're mentioning, they stayed behind my
> seat under my seat in the back of that truck and
> unloaded. They wasn't loaded. No clips or anything.
> You know, they wasn't used for nothing but hunting, but
> they stayed in my vehicle, you know. That's -- that was
> always. Didn't have any intentions on even, you know,
> doing anything with the guns. That's just where they
> stay, you know, in my vehicle. That's all about that
> firearm situation.

(Id. at 10). The Court replied that it had "already ruled on that
issue." (Id.). The Government recommended a sentence at the low
end of the guideline range, in accordance with the plea agreement.
(Id. at 11). The Court concurred with the Government's
recommendation and sentenced Tolbert to 135 months of
imprisonment. (Id. at 16). Tolbert did not appeal his conviction
or sentence.

On June 28, 2022,[3] Tolbert, proceeding without an attorney, filed the instant § 2255 motion raising various claims of ineffective assistance of counsel and a claim of prosecutorial misconduct in obtaining his federal indictment. (Doc. 48). Tolbert later filed a memorandum of law in support of his § 2255 motion.[4] (Doc. 54). The Government filed a response in opposition to Tolbert's motion (Doc. 52), and Tolbert did not file a reply. Thus, Tolbert's § 2255 motion is ripe for resolution.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally

---

[3] Under the mailbox rule, "a _pro se_ prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam). Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). Tolbert's motion states that it was placed in the prison mailing system on June 28, 2022. (Doc. 48 at 16).

[4] On the same date that Tolbert signed his memorandum of law, he also signed a motion for leave to submit memorandum of law. (See Docs. 52, 53). The memorandum was received and docketed before the motion. Because the memorandum has been considered by the Court, the motion for leave to submit memorandum of law (Doc. 53) is **MOOT**.

convicted." <u>Frady</u>, 456 U.S. at 164.    Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. <u>United States v. Addonizio</u>, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979).    Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.    The appellate process does not permit reruns." <u>Moore v. United States</u>, 598 F.2d 439, 441 (5th Cir. 1979).

<u>United States v. Evans</u>, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

### III. <u>DISCUSSION</u>[5]

#### A.    **Failure to Properly Advise and Negotiate.**

Tolbert implies that his guilty plea was not knowing and voluntary because his counsel did not inform him of the rights he would be waiving by pleading guilty and incorrectly advised him that he would receive safety valve relief and probation if he pled guilty.    (Doc. 48 at 8-9).    Tolbert asserts that had counsel properly advised him, he would not have entered a guilty plea and would have instead proceeded to trial.    (<u>Id.</u>).    Relatedly, Tolbert suggests that his counsel was ineffective for failing to "secure" a plea agreement that was "more favorable" with respect to the "preservation of issues for Appeal."    (Doc. 54 at 26).

---

[5] For the sake of organization, the Court is considering Tolbert's grounds for relief in a different order than that in which they were raised.

To prevail on a claim of ineffective assistance of counsel, Tolbert must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) that counsel's poor showing prejudiced his defense because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Tolbert bears the burden of proving his ineffective assistance claims, and he must meet his burden on both prongs to succeed. Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

The proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and courts adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v.

McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice, Tolbert "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To show prejudice in the context of an ineffective assistance claim arising out of the plea process, Tolbert "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Tolbert must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

To be knowing and voluntary, "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999) (quotations omitted). When accepting a guilty plea, a district court must ensure that these three "core concerns" of Federal Rule of Criminal Procedure 11 have been met. United States v. Lejarde-Rada, 319 F.3d 1288, 1289 (11th Cir. 2003) (per curiam).

Additionally, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). As the Supreme Court has made clear:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).

In this case, the record reflects that Tolbert voluntarily pled guilty to the offense charged in count two of the indictment with full knowledge of the nature of the charge against him and the potential consequences of his plea. Tolbert's plea agreement specifically informed him that he was waiving certain rights by pleading guilty, including the right to a trial by an impartial jury, and the right to confront and cross-examine witnesses and to call witnesses and present other evidence in his defense. (Doc. 20 at 1). Tolbert signed the plea agreement immediately below a paragraph that said he had "carefully reviewed every part" of the plea agreement with his attorney, understood the plea agreement, and voluntarily agreed to it. (Id. at 13). Tolbert also stipulated that the factual resume was "true and accurate in every

respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt." (Id.; see also Doc. 19).

At his change-of-plea hearing, Tolbert acknowledged that he had received copies of the indictment and plea agreement and had read and reviewed them with his attorney, had fully discussed all of the facts surrounding the charge with his attorney, fully understood the charge against him, and fully understood and agreed with the terms and conditions of the plea agreement and with factual resume. (Doc. 46 at 3-4). Tolbert stated that he was fully satisfied with the representation he had received from counsel in the case. (Id.). He confirmed that no one had made any promises to him or attempted to force, pressure, or threaten him to plead guilty. (Id. at 4). Tolbert confirmed that he understood the potential penalties for the offense, including the mandatory minimum ten-year term of imprisonment. (Id. at 4-5). He also confirmed that he understood the sentence imposed might be different from any estimate his attorney or anyone else might have given him, and that he would still be bound by his plea if his sentence was more severe than expected. (Id. at 5-6). The Court informed Tolbert that he could "lose valuable rights" by pleading guilty, including the right to proceed to trial and hold the Government to its burden of proving his guilt beyond a reasonable doubt, and Tolbert confirmed that he understood. (Id. at 5-8).

Tolbert also confirmed that he understood the appeal and collateral attack waiver in his plea agreement and the limited exceptions thereto. (Id. at 6-7). Tolbert acknowledged that he understood the elements of the offense to which he was pleading guilty and stated that he had in fact committed the acts and done the things he had admitted to doing in the factual resume. (Id. at 8).

Tolbert has not met his "heavy burden to show that his statements under oath were false." See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam).[6] As reflected above, the Court addressed Rule 11's core concerns during the guilty plea colloquy and ensured that Tolbert was entering his plea free from coercion and with understanding of the nature of the charges against him and the consequences of his plea. Nothing in the record supports Tolbert's belated and self-serving suggestion that his plea was involuntary or unintelligent because his counsel did not adequately inform him of the rights he was waiving by pleading guilty. On the contrary, it is clear that Tolbert was well aware that by pleading guilty, admitting under oath to the conduct described in the factual resume, and waiving

---

[6] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority. See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."); Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

his right to appeal except in the very limited circumstances enumerated in the plea agreement, he was giving up the right to challenge the sufficiency of the underlying evidence and the way that evidence was obtained. Given the foregoing, Tolbert cannot show ineffective assistance based on his claim that counsel failed to adequately inform him of "the number . . . or range of the waivers or defaults that would be triggered" by his guilty plea. (See Doc. 48 at 9).

Nor can Tolbert show ineffective assistance based on his counsel's alleged incorrect sentence estimate, because the plea agreement and properly conducted guilty plea colloquy dispelled any prejudice allegedly created by counsel's erroneous sentence prediction. Tolbert suggests that he agreed to plead guilty because his counsel told him he would receive a safety valve reduction and be sentenced to probation. (Id.). However, the penalty page of the indictment, which Tolbert "had a full opportunity" to read and review with his attorney, clearly indicated that the sentencing range for count two was ten years to life imprisonment. (See Doc. 1-1; Doc. 46 at 3). Likewise, the plea agreement, which Tolbert "carefully reviewed" with his attorney, expressly stated that Tolbert's offense carried a "[m]imimum mandatory 10 years to life imprisonment." (See Doc. 20 at 3, 13). The plea agreement also stated that "no one can predict with certainty what the sentencing range will be in this case until

after the pre-sentence investigation has been completed and the Court has ruled on the results of that investigation;" that "the Court may not necessarily sentence the defendant in accordance with the Guidelines;" and "that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court." (Id. at 4).

During his plea colloquy, Tolbert acknowledged his understanding that he "could receive a term of imprisonment of no less than ten years, up to life in prison" for his crime. (Doc. 46 at 4-5). Tolbert stated under oath that no one had made any promises in order to induce him to plead guilty, and that he was fully satisfied with his counsel's representation. (Id. at 3-4). Tolbert confirmed his understanding that the Court could reject any sentencing recommendation based on the plea agreement and impose a sentence that was more severe than he might anticipate, and that his ultimate sentence could differ from his counsel's estimate. (Id. at 5-6). Tolbert also agreed under oath that he had committed the offense conduct detailed in the factual resume. (Id. at 8).

Thus, even accepting *arguendo* Tolbert's unlikely allegation regarding his attorney's sentence prediction, Tolbert cannot show that he was prejudiced. See United States v. Himick, 139 F. App'x 227, 228-29 (11th Cir. 2005) (stating that "a defendant's reliance on an attorney's mistaken impression about the length of his

sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence"); Wilborn v. United States, 2014 WL 3385307, at *8 (N.D. Ala. July 10, 2014) (["W]here . . . a court correctly advises a defendant at the plea colloquy about his potential sentence, including its possible maximum and minimum, a defendant generally cannot establish prejudice on an effective-assistance claim based on an erroneous sentence prediction."); Amoo v. United States, 2009 U.S. Dist. LEXIS 153185, at *8-9, 2009 WL 10705620, at *3 (N.D. Ga. May 7, 2009) (holding that petitioner could not show prejudice based on his counsel's erroneous prediction that he would receive a safety valve reduction and downward departure and would not receive firearm and money laundering enhancements, because petitioner knew the possible maximum sentence he faced, understood that his ultimate sentence could differ from his counsel's estimate, understood that the court was not bound by the parties' agreements and recommendations, and received a sentence well below the possible maximum sentence).  Tolbert has failed to demonstrate a reasonable probability that if not for his counsel's alleged incorrect assertions regarding his likely sentence, he would not have pled guilty and would have insisted on going to trial. Accordingly, his claim of ineffective assistance based on his counsel's alleged sentence prediction fails.

To the extent Tolbert complains of his counsel's failure to "secure a more favorable plea agreement respective to preservation of issues for Appeal," (see Doc. 54 at 26), he has presented no evidence indicating that the Government would have acquiesced to a plea agreement without a standard appeal and collateral attack waiver provision, and nothing in the record supports such a finding. Tolbert has also failed to demonstrate that he was prejudiced by counsel's alleged failure, since it is clear from the record that he made the calculated decision to plead guilty with full awareness of the concomitant appeal waiver. Tolbert has also failed to identify any issues that had a reasonable probability of success on appeal.

Lastly, Tolbert cannot convince this Court "that a decision to reject the plea bargain would have been rational under the circumstances." See Padilla, 559 U.S. at 372. Tolbert accepted an advantageous plea agreement. His offense carried a mandatory minimum prison term of ten years and a maximum term of life. As a result of his plea agreement, Tolbert received a three-point offense-level reduction for acceptance of responsibility and a recommendation that he be sentenced at the low end of the guideline range.[7] It is notable that Tolbert does not deny the essential

---

[7] After receiving credit for acceptance of responsibility, Tolbert's guideline imprisonment range was 135 to 168 months. Had Tolbert foregone credit for acceptance of responsibility and been found guilty after a trial, his guideline imprisonment range would

facts establishing his guilt; he merely claims - unconvincingly[8] - that he was unaware of the exact contents of the package of illegal contraband he attempted to smuggle into the prison.  (See Doc. 54 at 31).  Had Tolbert proceeded to trial and been found guilty, he almost certainly would have received a significantly greater sentence than the one he received after being given "the benefit of [his plea] bargain" by the Court.  (See Doc. 47 at 16).  Accordingly, Tolbert is entitled to no relief as to these claims.

**B.    Pre-Plea Failure to Investigate.**

Tolbert also suggests that he would not have entered a guilty plea had his attorney properly investigated the case.  (Doc. 48 at 8).  Specifically, Tolbert alleges that his counsel should have reviewed the evidence; obtained witness statements; investigated the conduct of prison staff and law enforcement, the reasons behind the State of Alabama's decision not to prosecute him, and the federal grand jury proceedings; researched the "provisions/law" applicable to the firearm enhancement under U.S.S.G. §

---

have been 188 to 235 months.

[8] Tolbert's assertions in this regard are inconsistent with one another and with the record.  Tolbert claims to know that the "first package" of contraband he smuggled into Fountain contained two cell phones and no drugs, but he fails to explain why he would choose not to similarly verify the contents of a subsequent package.  (See Doc. 19 at 3; Doc. 54 at 7, 30-31).  Also, a search of the inmate to whom Tolbert intended to give the package revealed a large amount of what appeared to be methamphetamine ice, suggesting that this may not have been the first time Tolbert brought drugs into the prison.  (See Doc. 19 at 2-3).

2D1.1(b)(1); and presented his findings to Tolbert. (Id.). Tolbert asserts that had counsel done so, he would not have signed the plea agreement and would have proceeded to trial. (Id.).

A "guilty plea waives all non-jurisdictional defects occurring prior to the time of the plea." Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam); see Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). This includes any pre-plea claim of ineffective assistance of counsel, "unless the deficient performance relates to the voluntariness of the plea itself." Bullard v. Warden, Jenkins Corr. Ctr., 610 F. App'x 821, 824 (11th Cir. 2015) (per curiam).

Claims that counsel should have conducted a pre-plea investigation or pursued possible defenses are waived by a knowing and voluntary guilty plea. See Cruz v. United States, 2006 U.S. Dist. LEXIS 58452, at *5, 2006 WL 2443822, at *2 (M.D. Fla. Aug. 21, 2006) ("A knowing and voluntary guilty plea waives all non-jurisdictional defects, including claims that defense counsel should have conducted an investigation or raised a defense."); Anfield v. United States, 2010 U.S. Dist. LEXIS 34412, at *18-19, 2010 WL 1406323, at *7 (S.D. Ga. Mar. 23, 2010) ("Anfield's claims

21

challenging the representation of counsel with regard to the investigation and pursuit of possible defenses to the crimes committed do *not* relate to the voluntariness of the plea.  They are therefore waived by the entry of the guilty pleas.") (emphasis in original) (quotation and alteration omitted), <u>report and recommendation adopted</u>, 2010 U.S. Dist. LEXIS 34408, 2010 WL 1406311 (S.D. Ga. Apr. 7, 2010); <u>United States v. Johnson</u>, 2014 WL 1356229, at *5 (S.D. Ala. Apr. 7, 2014) ("Johnson's claim challenges the representation of counsel with regard to the investigation and pursuit of possible defenses to one of the three crimes charged in the indictment and does not relate to the voluntariness of the plea.  It is therefore waived by the entry of his guilty plea."); <u>Clark v. United States</u>, 2018 U.S. Dist. LEXIS 211598, at *21-22, 2018 WL 6606515, at *7 (M.D. Fla. Dec. 17, 2018) ("Because Petitioner entered a knowing and voluntary guilty plea, he waived any claim that counsel's pre-plea investigation was deficient.") (internal record citation omitted).

Likewise, "[c]laims that trial counsel gave ineffective assistance in regard to a Fourth Amendment suppression issue are among those challenges waived by a knowing and voluntary guilty plea." <u>Skow v. United States</u>, 2016 U.S. Dist. LEXIS 78360, at *5, 2016 WL 3344577, at *2 (N.D. Ga. June 16, 2016); <u>see also</u> <u>Franklin</u>

v. United States, 589 F.2d 192, 194-95 (5th Cir. 1979)[9] (holding that guilty plea waives claims regarding Miranda warnings, coerced confessions, perjury, and illegal searches and seizures in a § 2255 proceeding); Reigosa v. United States, 2011 U.S. Dist. LEXIS 9380, at *26, 2011 WL 346076, at *9 (S.D. Fla. Jan. 4, 2011) ("[A] voluntary and intelligent guilty plea constitutes a waiver of a claim of an involuntary confession under the Due Process Clause or Miranda."), report and recommendation adopted, 2011 U.S. Dist. LEXIS 9379, 2011 WL 346068 (S.D. Fla. Feb. 1, 2011).

Here, despite Tolbert's attempt to connect it to his decision to plead guilty, it is clear that Tolbert's claim that counsel was ineffective for failing to conduct a proper pre-plea investigation and defense does not relate to the voluntariness of his plea. Tolbert's claim is therefore waived by the entry of his guilty plea. Even if Tolbert's claim could be construed as an attack on the voluntariness of his plea, the claim would not succeed because, as this Court has already determined, the record clearly demonstrates that Tolbert's guilty plea was voluntarily and knowingly made. See Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) ("[B]ecause we have already held Smith's plea to be voluntary, it follows that his claims of ineffectiveness unrelated

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to the guilty plea are waived—*e.g.*, Johnson's alleged failure to review the prosecutor's file to verify laboratory test results that the substances Smith delivered were in fact heroin and cocaine; Johnson's alleged failure to investigate witnesses and the legality of Smith's arrest; or any other alleged failure of Johnson to find 'holes' in the government's case against Smith.").

It is worth emphasizing that Tolbert entered his guilty plea in this case after admitting that he was in fact guilty of committing the crime to which he was pleading guilty. As noted above, such sworn statements carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See Blackledge, 431 U.S. at 74. Indeed, even now, despite his litany of vague and conclusory assertions about what his attorney should have done to challenge the Government's case, Tolbert does not contest the central fact that he was caught during a lawful search attempting to smuggle a package containing methamphetamine into an Alabama prison for the purpose of providing it to an inmate. Accordingly, Tolbert is entitled to no relief with respect to his claims that counsel failed to conduct a proper investigation and defense.

**C.   Prosecutorial Misconduct.**

Tolbert alleges that the federal prosecutor misled the grand jury about the status of his state case in order to "salvage" his "botched" state prosecution by obtaining a federal indictment.

(Doc. 48 at 10-11).  Tolbert also claims that his counsel should have challenged the origins of his federal case and should have investigated the federal prosecutor's actions in assembling a federal case from a "non-prosecutable" state case and her conduct before the grand jury.  (Id.).

Tolbert's claim of prosecutorial misconduct is barred by the collateral attack waiver in his plea agreement.  A defendant who enters into a plea agreement may waive the right to collaterally attack his conviction or sentence under § 2255.  See, e.g., Griffis v. United States, 746 F. App'x 880, 882-83 (11th Cir. 2018) (per curiam).  Collateral attack waivers are valid if they are made knowingly and voluntarily.  Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005).  They are enforceable if the Government shows "either (1) the district court specifically questioned the defendant concerning the [collateral attack] waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  Id. at 1341 (quoting United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993)).

In this case, both requirements are met.  Tolbert's plea agreement clearly stated that, as part of the agreement, Tolbert was "knowingly and voluntarily waiv[ing] the right to file any direct appeal or any collateral attack, *including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255*."

(Doc. 20 at 11) (emphasis added).  The plea agreement made clear that the only exceptions to this waiver were (1) a direct appeal challenging any sentence exceeding the statutory maximum; (2) a direct appeal challenging any sentence constituting an upward departure or variance from the advisory guideline range; and (3) a direct appeal or § 2255 motion raising a claim of ineffective assistance of counsel.  (Id.).

At Tolbert's guilty plea hearing, the Court specifically addressed the appeal and collateral attack waiver and listed the three exceptions, and Tolbert expressly acknowledged that he understood the terms of the waiver provision.  (Doc. 46 at 6-7).  Tolbert also confirmed that he had read and signed the plea agreement, reviewed it with his attorney, and understood and agreed to be bound by all of its terms.  (Id. at 4).  The record shows that Tolbert's agreement to plead guilty, including the waiver of his right to file an appeal or collateral attack, was knowing and voluntary.  Accordingly, Tolbert's claims of prosecutorial misconduct are barred by the collateral attack waiver in his plea agreement and are due to be dismissed on that basis.

Tolbert's ineffective assistance claims complaining of his attorney's failure to investigate and challenge the prosecutor's conduct in obtaining the federal indictment against him do not relate to the voluntariness of his plea.  They are therefore waived by Tolbert's guilty plea.  See Diggs v. United States, 2010 U.S.

Dist. LEXIS 13995, at *10, 2010 WL 582772, at *4 (N.D. Ga. Feb. 18, 2010) ("[B]y pleading guilty to his crimes of conviction, . . . Diggs waived his § 2255 claims alleging that his trial counsel provided ineffective assistance by conducting an inadequate pretrial investigation, by failing to challenge the indictment based on the lack of evidence that Diggs possessed a firearm during the bank robbery, and by failing to seek the grand jury minutes."). Even if these claims could be construed as an attack on the knowing and voluntary nature of his guilty plea, Tolbert is entitled to no relief because the record clearly reflects that he entered his guilty plea knowingly and voluntarily. Moreover, while not short of laundry-listed and conclusory assertions, Tolbert's filings are devoid of any specific facts evidencing prosecutorial misconduct or indicating that his counsel had any viable basis to challenge the indictment or the actions of the federal prosecutor. Accordingly, Tolbert is entitled to no relief on these claims.

   **D.   Failure to Properly Dispute the Firearm Enhancement.**

   Tolbert claims that his attorney rendered ineffective assistance during his sentencing proceedings by failing to "investigate the underlying circumstances" regarding the guns found in his vehicle and failing to "correctly argue the firearm enhancement." (Doc. 48 at 4-5). Tolbert contends that his attorney was unaware of the legal standards applicable to the enhancement, and he identifies a multitude of issues that he

asserts his counsel should have investigated and/or raised to contest the application of the enhancement. (See id.). These include: that the guns were unloaded and there was no ammunition found in Tolbert's truck; that the guns were dirty and dusty and had not been recently fired; that the guns were not readily accessible to a person seated in the truck's driver's seat and could not be accurately aimed from inside the cab of the truck; that there was no evidence of Tolbert's fingerprints or palm prints on the guns; that there were no photographs showing the location of the guns prior to the search of Tolbert's truck; that Tolbert did not have counsel advising him when investigators requested to search his truck; and that the truck was searched without a warrant.[10] (See id.). Tolbert claims that because of his counsel's errors, the Court applied the firearm enhancement, and he was therefore ineligible for safety valve relief. (Id. at 5).

As noted *supra*, Tolbert's offense level was increased by two levels pursuant to U.S.S.G. § 2D1.1(b)(1) because "a dangerous

---

[10] A number of these issues are obvious non-sequiturs. For example, there was no dispute regarding the type or length of the guns found in Tolbert's vehicle, nor was there any assertion that the guns were loaded or that ammunition was found in the vehicle. (See Docs. 1, 19, 30, 36, 47). Similarly, the application of the firearm enhancement was not based on the guns' accessibility to a person seated in the truck's driver's seat or their ability to be accurately aimed from inside the truck's cab. Tolbert was observed *outside his vehicle* while waiting to pick up the package of contraband (see Doc. 19 at 2), and Tolbert admits that he could access the guns by reaching into the back of the truck's cab from the outside. (See Doc. 48 at 5).

weapon was possessed." (See Doc. 36 at 6; Doc. 39 at 1). Section 2D1.1(b)(1)'s two-level enhancement for possession of a firearm or other dangerous weapon "is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction." United States v. Smith, 127 F.3d 1388, 1390 (11th Cir. 1997) (per curiam). The enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." United States v. Carillo-Ayala, 713 F.3d 82, 90 (11th Cir. 2013).

"To justify a firearms enhancement, the government must establish by a preponderance of the evidence either (1) that a firearm was present at the site of the charged conduct, or (2) that the defendant possessed a firearm during conduct associated with the offense of conviction." United States v. Montenegro, 1 F.4th 940, 945-46 (11th Cir. 2021) (quotations omitted). "[T]he government is not required to prove that the firearm was used to facilitate the distribution of drugs for the firearms enhancement to apply; its mere presence during the drug offense is sufficient." Id. Evidence of "proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." Carillo-Ayala, 713 F.3d at 92.[11]

---

[11] There is no question that the Government met its initial burden in this case.

"If the government meets its initial burden, the burden then shifts to the defendant to show that a connection between the weapon and the offense was clearly improbable." <u>Montenegro</u>, 1 F.4th at 946 (quotation omitted). Section 2D1.1(b)(1) "places a heavy burden of negation on the defendant." <u>Carillo-Ayala</u>, 713 F.3d at 90. "In effect, the government benefits from a rebuttable presumption that a firearm, if present—just present, not present in proximity to drugs—is 'connected with the offense.' The defendant must disprove a connection with the drug offense to the extent of showing it is 'clearly improbable' they were symbiotic." <u>Id.</u>

As an initial matter, the record does not substantiate Tolbert's assertion that his counsel "did not know the laws concerning the gun enhancement, or the relevant USSG section and comments." (<u>See</u> Doc. 48 at 4). Tolbert specifically claims that his counsel was unaware of the statement in the commentary to § 2D1.1 that: "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, *the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.*" U.S.S.G. § 2D1.1, cmt. n.11(A) (emphasis added). However, Tolbert's counsel demonstrated his knowledge and understanding of § 2D1.1(b)(1) by contesting its application in a written objection to the PSR and

during Tolbert's sentencing hearing. Moreover, contrary to Tolbert's contention that his attorney was unaware of the comment to § 2D1.1 referencing an unloaded hunting rifle, the record reflects that counsel repeatedly objected to the firearm enhancement on the basis that the weapons were used merely for recreational hunting and not in connection with Tolbert's drug offense.

In accusing his counsel of not knowing "the standard to meet or defeat" with respect to the firearm enhancement (see Doc. 48 at 5), it is Tolbert who cites the wrong standard. Tolbert asserts that the "standard for the enhancement" is that "given the circumstances, it was probable" that the gun was "used for the protection of drugs/money." (Id. at 4) (emphasis in original). In fact, as outlined above, Tolbert had the burden to show that a connection between the firearms and his drug offense was "clearly improbable." See, e.g., Montenegro, 1 F.4th at 946. This he could not do, given his admitted knowledge that the guns were in his vehicle during his roadside meeting to pick up the package containing the drugs and while he transported the package to the prison, and his sworn stipulation that the guns had the potential to facilitate the commission of the offense.

Although Tolbert belatedly raises a list of issues he claims his counsel should have raised to dispute the firearm enhancement, the "test for ineffectiveness is not whether counsel could have

done more; perfection is not required." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1518 (11th Cir. 1995). "Nor is the test whether the best criminal defense attorneys might have done more." <u>Id.</u> Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Id.</u>; <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) (per curiam) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Given the circumstances detailed above, it is clear that Tolbert's counsel performed within the wide range of reasonable professional assistance in contesting the firearm enhancement.

The undersigned notes that Tolbert personally addressed the Court concerning the matter of the firearms at sentencing and brought up some of the issues he now claims his counsel should have raised, including his assertions that the guns were not loaded, were stored in his vehicle at all times, and were used only for hunting. (<u>See</u> Doc. 47 at 10). To the extent these issues had not already been raised by counsel, they had no reasonable probability of changing the Court's ruling had they been asserted by Tolbert's attorney rather than by Tolbert himself. Notably, when he personally addressed the Court at sentencing, Tolbert failed to raise a number of issues that he now claims his counsel

was constitutionally ineffective for failing to assert,[12] including his claim that the guns were stored in his truck to keep them safe from his "curious 'special-needs'" child, his assertion that the weapons were dirty and dusty and had not been used in a long time, his speculation that testing would have shown that his prints were either not on the guns or were "months old," and his contention that testing would have shown "that no ammunition had been loaded into the gun recently." (See Doc. 47 at 10; Doc. 48 at 4-5; Doc. 54 at 6). Given Tolbert's own failure to raise these issues at the time of sentencing, he cannot credibly claim with the benefit of a year of hindsight that his counsel performed deficiently by failing to investigate and/or assert them to dispute the firearm enhancement.

Nor can Tolbert show that he was prejudiced by his counsel's alleged omissions. It is undisputed that Tolbert knew there were two firearms inside the cab of his truck at the time of his roadside rendezvous to pick up the contraband and while he transported the package containing methamphetamine to the prison. As the Government's counsel alluded to at sentencing, "there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The

---

[12] When Tolbert was finished addressing the matter of the firearms, he concluded: "That's all about that firearm situation." (See Doc. 47 at 10).

firearm's *potential* use is critical." <u>Carillo-Ayala</u>, 713 F.3d at 92. Indeed, Tolbert admitted as part of his guilty plea that the guns had the potential to facilitate the commission of the offense. (<u>See</u> Doc. 19 at 4; Doc. 46 at 8).

Moreover, the fact that a firearm was unloaded and there was no ammunition at the scene "does not automatically defeat application of the enhancement." <u>United States v. Maloch</u>, 739 F. App'x 976, 977–78 (11th Cir. 2018) (per curiam) (citing <u>United States v. Pham</u>, 463 F.3d 1239, 1245-46 (11th Cir. 2006)). A firearm can facilitate a drug offense by emboldening the defendant who could display the weapon. <u>Carillo-Ayala</u>, 713 F.3d at 96; <u>see also</u> <u>United States v. Paulk</u>, 917 F.2d 879, 882 (5th Cir. 1990) ("Since it is difficult, if not impossible to tell from sight whether a gun is loaded or operational, an unloaded or broken gun may be of use in a criminal act. Flashing an unloaded gun often has the same effect as waving a loaded one. It instills fear in the average citizen and as a consequence creates an immediate danger that a violent response will ensue. Although the gun may not be able to inflict harm, its appearance may evoke it.") (internal citations, quotation marks, and alterations omitted).

Given the undisputed facts outlined above, the Court found that Tolbert could not demonstrate that a connection between the guns found in his truck and his drug offense was clearly improbable. Indeed, the Court did not "even see this as a close

34

case given the standard as it's been defined by the Eleventh Circuit." (Doc. 47 at 8-9); see United States v. Santos-Santana, 2022 U.S. App. LEXIS 35782, at *2-3, 7-9, 25, 2022 WL 17973602, at *1-3, 8 (11th Cir. Dec. 28, 2022) (per curiam) (finding that defendants failed to show that a firearm found aboard a thirty-foot vessel transporting drugs on the high seas was not connected to their drug offense, where the gun was in a black plastic bag underneath an unused engine in the rear of the boat, the gun was unloaded and there was no ammunition present on the vessel, and defendants contested ownership and possession of the gun).

The Court again notes that Tolbert's knowing and voluntary guilty plea waived all non-jurisdictional defects in the proceedings against him, including any challenges to the search of his vehicle. See Tiemens, 724 F.2d at 929. Thus, to the extent Tolbert complains of his counsel's failure to investigate and make arguments regarding search and seizure issues to dispute the firearm enhancement, he cannot show that counsel was ineffective for failing to raise waived claims at sentencing. See Cole v. United States, 2021 U.S. Dist. LEXIS 160834, at *11, 2021 WL 3744088, at *4 (N.D. Tex. July 14, 2021) ("Because Movant's guilty plea was voluntary, he waived any Fourth Amendment challenges to the search of his apartment, and any claim of ineffective assistance of counsel based on such challenges. Counsel was therefore not ineffective for failing to raise a waived Fourth

Amendment challenge at sentencing.") (internal citations omitted), report and recommendation adopted, 2021 U.S. Dist. LEXIS 159323, 2021 WL 3743807 (N.D. Tex. Aug. 24, 2021).

Additionally, the exclusionary rule does not apply to sentencing proceedings, and evidence seized in violation of the Fourth Amendment can be considered at sentencing as long as it is reliable. United States v. Jackson, 713 F. App'x 963, 968 (11th Cir. 2017) (per curiam) (citing United States v. Lynch, 934 F.2d 1226, 1235-37 (11th Cir. 1991)). A sentencing court may also consider statements obtained in violation of Miranda[13] if they are voluntary and reliable. Id. Tolbert has offered nothing to suggest that the evidence seized from his truck was not reliable; on the contrary, he acknowledges that the firearms were kept inside the truck. Nor does he offer anything to suggest that the statements he made to law enforcement on the night of his arrest were not voluntary and reliable. Thus, even if they were not waived by his guilty plea, Tolbert cannot show that his counsel was ineffective for failing to raise challenges at sentencing related to the search of his vehicle and seizure of the firearms.

---

[13] The Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436 (1966), "protects a person's Fifth Amendment privilege against self-incrimination by requiring law enforcement authorities to advise a person subject to custodial interrogation of certain rights and to respect the person's invocation of those rights." United States v. Bernal-Benitez, 594 F.3d 1303, 1318 (11th Cir. 2010).

See United States v. Vargas, 792 F. App'x 764, 771 (11th Cir. 2019) (per curiam) ("[T]he enhancement was a sentencing issue and the exclusionary rule does not apply in the sentencing context. Thus, any error in failing to suppress this evidence was harmless to Villar in the application of the sentencing enhancement."). For the reasons set forth above, Tolbert's sentencing-related ineffective assistance of counsel claims fail.

    **E.    Failure to File a Direct Appeal.**

Tolbert further argues that his counsel was ineffective for failing to file a direct appeal challenging the Court's application of the § 2D1.1(b)(1) firearm enhancement and failure to grant safety valve relief. (Doc. 48 at 6). Tolbert avers that had counsel explained to him that "this was an Appealable issue," he "would have instructed Counsel to File a Direct Appeal on the issue of gun enhancements." (Id.).

Where a defendant neither specifically instructed counsel to file an appeal nor asked that an appeal not be taken, the court must first determine "whether counsel in fact consulted with the defendant about an appeal" by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). If counsel has consulted with the defendant, counsel "performs in a professionally

unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id.

"If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

With respect to the prejudice prong, a petitioner must demonstrate that had he received reasonable advice from his attorney about an appeal, he would have instructed his attorney to file an appeal. Id. at 486. While "showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed," the petitioner need only show that, but for his attorney's deficient performance, he would have appealed. Id.

Tolbert does not allege that he requested his counsel to file a notice of appeal. He contends that his attorney did not consult with him about the possibility of filing an appeal, but he has set forth no facts suggesting that he reasonably demonstrated to counsel that he was interested in appealing. Thus, Tolbert's

ineffective assistance claim could only be premised on counsel's failure to consult with Tolbert about appealing or counsel's failure to file a notice of appeal if there was a reason to believe that a rational defendant would have wanted to appeal in Tolbert's circumstances.  See Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007); Flores-Ortega, 528 U.S. at 480.

The record reveals that no rational defendant in Tolbert's circumstances would have wanted to file an appeal challenging the firearm enhancement and failure to grant safety valve relief.  As explained previously, Tolbert knowingly and voluntarily waived the right to challenge his sentence on direct appeal unless the sentence exceeded the statutory maximum or was an upward departure or variance, neither of which came to pass.  Thus, an appeal raising the issues identified by Tolbert would have been subject to dismissal based on Tolbert's valid and enforceable appeal waiver.  Because no rational defendant would have wanted to file a futile appeal in these circumstances, Tolbert's counsel was not ineffective for failing to file a frivolous appeal on his own initiative or failing to consult with Tolbert about appealing issues he had waived the right to appeal.  Accordingly, Tolbert is entitled to no relief as to this claim.

**F.    Cumulative Error.**

Finally, Tolbert alleges cumulative error based on his counsel's "numerous errors" that he alleges left him "virtually

without Counsel at all." (Doc. 48 at 12). Tolbert's claim of cumulative error can be quickly dispatched. "Where there is no error or only a single error, there can be no cumulative error." United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011). As detailed above, Tolbert has not demonstrated constitutionally ineffective assistance with respect to any of his counsel's many alleged deficiencies. Accordingly, Tolbert cannot show cumulative error and is entitled to no relief on this claim. See Pierre v. United States, 2019 U.S. App. LEXIS 16281, at *4, 2019 WL 5967873, at *2 (11th Cir. May 30, 2019) ("[T]o the extent that Pierre's claim of cumulative error was based on his claims of ineffective assistance of counsel, this claim fails because, as discussed above, counsel did not render ineffective assistance, and, therefore, there can be no cumulative error.").

## IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. See Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1).

A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Tolbert's claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Tolbert is not entitled to a certificate of appealability and should not be permitted to proceed *in forma pauperis* on appeal.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner Tarrence Dramon Tolbert's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 48) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Tarrence Dramon Tolbert. It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED**.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a]

party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **4th** day of **November, 2024.**

<u>    /s/ SONJA F. BIVINS    </u>
**UNITED STATES MAGISTRATE JUDGE**